**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHEN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Kathryn A. Arden, | : | Case No. 1:10CV0623 |
| Plaintiff, | : | |
| v. | : | |
| Commissioner of Social Security, | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Defendant. | : | |

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of Defendant's final determination denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U. S. C. §§ 416 (i) and 423 and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U. S. C. §§ 1381 *et seq*. Pending are the parties' briefs on the merits (Docket Nos. 12 and13). For the reasons that follow, the Magistrate recommends that the Court affirm the Commissioner's decision.

**I. PROCEDURAL BACKGROUND**

Plaintiff filed applications for DIB and SSI on December 20, 2005 alleging that her disability began on November 17, 2005 (Docket No. 10, Exhibit 7, pp. 2-4; 7-9 of 24). Plaintiff's request for DIB benefits was denied initially and upon reconsideration (Docket No. 10, Exhibit 5, pp. 2-4; 5-7; 9-11; 12-13 of 35). On May 15, 2008, Plaintiff, represented by counsel, her spouse and Vocational Expert (VE) Beg Macey appeared and testified at an administrative hearing before Administrative Law Judge (ALJ) John D. McNamee-Alemany (Docket No. 10, Exhibit 3, p. 2-3 of 28). The ALJ rendered an unfavorable decision on June 24, 2008 (Docket No. 10, Exhibit 2, pp. 9-17 of 17). The Appeals Council denied

Plaintiff's request for review on January 26, 2010 (Docket No. 10, Exhibit 2, p. 2-4 of 17). Plaintiff filed a timely action seeking judicial review of the Commissioner's final decision.

## II. FACTUAL BACKGROUND

### A. PLAINTIFF'S TESTIMONY.

Plaintiff was diagnosed with a mental health disorder characterized by crying episodes, insomnia, some anxiety, antisocial tendencies, an inability to focus, mood swings and compromised memory (Docket No. 10, Exhibit 3, p. 6-8 of 28). Plaintiff showed signs of stress when in crowds of people or if required to remain seated. Witnesses reported persistent staring as if she were having a seizure (Docket No. 10, Exhibit 3, p. 11 of 28).

Plaintiff was undergoing treatment with a psychiatrist, Dr. Boris Royak, M. D. (Docket No. 10, Exhibit 3, p. 13 of 28). To treat her symptoms, Dr. Royak prescribed Abilify® (Docket No. 10, Exhibit 3, p. 6 of 28; www.abilify.com). When taking the medication as prescribed, the frequency of crying spells decreased to two to three times weekly; her moods were moderated, and she slept seven hours nightly with short naps during the day (Docket No. 10, Exhibit 3, pp. 7, 11 of 28). Even while taking her medication, Plaintiff described experiencing very abrupt mood swings from very happy to very sad with no identifiable trigger. When she did not take the medication, she paced the floor during the night (Docket No. 10, Exhibit 3, p. 11-12 of 28).

At the time of the hearing, Plaintiff was 38 years-old and had completed high school. She lived with her husband, son and daughter. Her mother lived next door. During her crying spells, Plaintiff felt safer having a family member or members with her. Plaintiff was able to perform the household chores of vacuuming, doing laundry and washing dishes. Because she had difficulty focusing, she took a longer time to complete these chores. Twice weekly Plaintiff left home to shop, accompanied by a

family member to help her remember her destination and the purpose of her trip (Docket No. 10, Exhibit 3, p. 8-9 of 28). Plaintiff took walks in the park with her family but she did not socialize with other people (Docket No. 10, Exhibit 3, p. 11 of 38).

Plaintiff's employment history included work at McDonalds, Dillards and as an assembler. At McDonalds, Plaintiff was employed forty hours weekly as a counter worker (Docket No. 10, Exhibit 3, p. 9 of 28). The onset of uncontrollable tears interfered with her ability to focus on her job (Docket No. 10, Exhibit 3, p. 10 of 28). Plaintiff was employed as a cashier/sales person at Dillards. She could not work there any longer because of uncontrolled episodic crying (Docket No. 10, Exhibit 3, pp. 12-13 of 28). As an assembler, Plaintiff sat in front of a board and attached wires to the board using a diagram. She was a victim of downsizing; however, she could no longer perform this job as she could not sit for eight hours. She would not be able to sit especially when an unexpected panic attack occurred (Docket No. 10, Exhibit 3, pp. 12 of 28, 13-14 of 28).

**B. WITNESS TESTIMONY**

Plaintiff had been married for nine years and her spouse testified that he had an opportunity to observe Plaintiff daily (Docket No. 10, Exhibit 3, p. 18 of 28). He believed that Plaintiff took her mediation daily. However, Plaintiff did not "really function like normal people." She was easily stressed. She tended to exaggerate the situation (Docket No. 10, Exhibit 3, p. 19 of 28). He noticed that Plaintiff was nervous around people, and she had moments of fear or nervous reaction (Docket No. 10, Exhibit 3, p. 20 of 28). Plaintiff's spouse confirmed the observations of other persons that Plaintiff appeared at times to be "staring off" (Docket No. 10, Exhibit 3, p. 21 of 28). Plaintiff's husband opined that Plaintiff would have difficulty maintaining employment because she could not remain focused, and she would have difficulty following a routine (Docket No. 10, Exhibit 3, pp. 22-23 of 28). Plaintiff's

spouse also added that he is required to assume some of the household duties and some care of their son and daughter..

C. VE TESTIMONY.

The VE testified that a younger person with a high school education with no past relevant skill who could perform at all exertional levels provided he or she did not have to deal with the public and that he or she must avoid height or dangerous ordinances, could not perform Plaintiff's past relevant work in retail sales (Docket No. 10, Exhibit 3, pp. 23-24 of 28). However, there were other jobs in the national or regional economy that this hypothetical worker could perform:

| JOB | DOT NUMBER | NORTHWEST OHIO AVAILABILITY | NATIONAL AVAILABILITY |
|---|---|---|---|
| **Bench Assembler** | **706.684-022** | **1,000** | **200,000** |
| **Laundry Laborer** | **361.687-018** | **1,100** | **170,000** |
| **Final Assemble** | **713.687-018** | **700** | **100,000** |

(Docket No. 10, Exhibit 3, p. 24 of 28).

The VE added that if the hypothetical worker could not maintain attention for two hours, he or she could not perform any of these jobs without a special accommodation (Docket No. 10, Exhibit 3, p. 25 of 28). Moreover, competitive employment would be eliminated if the hypothetical worker were required to perform the following functions:

(1) Work in coordination with or in proximity to others without being distracted.
(2) Complete a normal work week and workday without interruptions.
(3) Interact appropriately with the public.
(4) Accept instructions and respond appropriately to criticism.
(5) Get along with co-workers and peers.
(6) Respond appropriately to changes in the work setting.

(Docket No. 10, Exhibit 3, p. 27 of 28).

## III. SUMMARY OF MEDICAL EVIDENCE

Dr. Royak diagnosed Plaintiff with schizoaffective disorder, manifested by paranoia, delusions and depressed mood (Docket No. 10, Exhibit 10, p. 6 of 52). All the pertinent findings on clinical examination that related to Plaintiff's condition included soft speech, paranoia, depressed mood and effect and decreased concentration. He noted that Plaintiff had difficulty with relationships and decreased frustration tolerance and decreased ability to tolerate stress (Docket No. 10, Exhibit 10, pp. 33-34 of 52). Dr. Royak opined that Plaintiff's progress with drug therapy was guarded as she had a history of noncompliance, at times, with taking her medication (Docket No. 10, Exhibit 10, pp. 5-7 of 52). It was Dr. Royak's opinion that Plaintiff's decreased ability to relate to others, inability to concentrate and paranoia would interfere with gainful employment (Docket No. 10, Exhibit 10, p. 7 of 52).

Dr. Royak administered psychiatric treatment and/or monitored Plaintiff's use of medication during visits on December 20, 2004; January 10, January 18, February 17, April 18, June 20, July 11, July 28, December 8, December 22, 2005; February 20, 2006; April 23, May 7, July 12, October 11, 2007; February 21 and March 20, 2008. During each visit, Dr. Royak documented the presence of suicidal and homicidal ideations, episodes of paranoia and delusions and other thought processes affecting mental status. Through the course of treatment several medications including Abilify®, Depakote, Risperal, Xanax and Zoloft®, all designed to treat depression, schizophrenia and other forms of mental illness, were prescribed (Docket No. 10, Exhibit 11, pp. 14- 36 of 36; Exhibit 12, p. 3-14 of 14).

On July 12, 2007, Dr. Royak opined that Plaintiff had a poor ability to function in the following areas:

1. Maintain attention for two hours.
2. Work in coordination with or proximity to other without being unduly distracted.
3. Complete a normal workday and workweek without interruptions from psychologically

based symptoms.

4. Perform at a consistent pace without an unreasonable number and length of rest periods.
5. Accept instructions and respond appropriately to criticism from supervisors.
6. Deal with normal work stress.
7. Deal with stress of semiskilled and skilled work.
8 Interact appropriately with the general public.
9. Maintain socially appropriate behavior.

(Docket No. 10, Exhibit 11, p. 3-6 of 36).

Dr. Caroline Lewin, Ph. D., a psychological consultant, conducted an evaluation on March 20, 2006, after which she affirmed the diagnosis of schizoaffective disorder (Docket No. 10, Exhibit 10, p. 15 of 52). Dr. Lewin opined that Plaintiff had the following degrees of limitation:

| | | |
|---|---|---|
| 1. | Restriction on activities of daily living | Mild |
| 2. | Difficulties in maintaining social functioning | Moderate |
| 3. | Difficulties in maintaining concentration, persistence or pace | Moderate |
| 4. | Episodes of decompensation each of extended duration | None |

(Docket No. 10, Exhibit 10, p. 21 of 52).

With the caveat that Plaintiff was not completely credible and that she overstated her limitations, Dr. Lewin continued her evaluation, finding that Plaintiff's capacity to sustain activity over a normal workday and workweek on an ongoing basis was moderately limited in the ability to:

1. Carry out detailed instructions.
2 Maintain attention and concentration for extended periods of time.
3 Perform activities within a schedule, maintain regular attendance and be punctual with customary tolerances.
4. Complete a normal workweek.
5. Interact appropriately with the general public.
6. Accept instructions and respond appropriately to criticism from supervisors.
7. Get along with coworkers or peers without distracting them or exhibiting behavioral extremes.
8. Ability to respond appropriately to change in the work setting

.

(Docket No. 10, Exhibit 10, pp. 25-26 of 52, 27 of 52).

Physical disorders manifested themselves periodically. On January 18, 2006, Plaintiff's white blood count was elevated (Docket No. 10, Exhibit 10, p. 2 of 52). A rash that lasted for three weeks was attributed to possible scabies on May 22, 2006 (Docket No. 10, Exhibit 10, p. 49 of 52). Plaintiff was treated for acute bronchitis and nicotine dependence on November 9, 2006. Zithromax and a recommendation to quit smoking were prescribed (Docket No. 10, Exhibit 10, p. 44 of 52). In December 2006, Plaintiff tested negative for throat strep infection (Docket No. 10, Exhibit 10, p. 41 of 52).

**IV. STANDARD OF DISABILITY**

DIB and SSI are available only for those who have a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (*citing* 42 U.S.C. § 423(a), (d); *See also* 20 C.F.R. § 416.920). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* (*citing* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); *See also* 20 C.F.R. § 416.905(a) (same definition used in the SSI context)).

The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical for purposes of this case, and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively. To assist clarity, the remainder of this Report and Recommendation references only the DIB regulations, except where otherwise necessary.

To determine disability under Sections 404.1520 and 416.920, a plaintiff must first demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)).

Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a

finding of disability. *Id.* A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.*

Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. *Id.*

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. *Id.*

For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Id.* (*citing Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001)(internal citations omitted) (second alteration in original)). If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates. *Id.* (*citing* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).

**V. THE ALJ'S FINDINGS**

The ALJ applied the governing five step analyses and determined that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2010. Plaintiff had not engaged in substantial gainful activity since November 17, 2005, the alleged onset date of disability.

At step two, the ALJ found that Plaintiff had the following severe impairments: schizoaffective disorder and anxiety.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1525 and 404.1526). Plaintiff did have the residual functional capacity

to perform a full range of work at all exertional levels that is simple, that does not involve intense stress and that does not require dealing with large numbers of the public. Plaintiff must avoid heights or dangerous machinery.

At step four, the ALJ found that Plaintiff was incapable of performing her past relevant work.

At step five, the ALJ found that Plaintiff, a younger individual age 18-49, with at least a high school education and the ability to communicate in English, was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Based upon his step five finding, the ALJ concluded that Plaintiff was not under a disability, as defined in the Act, at any time from November 17, 2005 through the date of decision or June 24, 2008 (Docket No. 10, Exhibit 2, pp. 9-17 of 17).

**VI. STANDARD OF REVIEW.**

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832 -833 (6th Cir. 2006). When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Johnson v. Astrue*, 2010 WL 5559542, *3 (N. D. Ohio 2010) (*citing Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009) (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). The reviewing court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility. *Id.* (*citing Walters*, *supra*, 127 F.3d at 528).

If the ALJ applied the correct legal standards and his or her findings are supported by substantial evidence in the record, his or her decision is conclusive and must be affirmed. *Id.* (*citing Warner v. Commissioner of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g)). Substantial

evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (*citing Rogers v. Commissioner of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007); *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971) (*citing Consolidated Edison v. NLRB*, 59 S. Ct. 206, 217 (1938)). The substantial evidence standard is intended to create a "zone of choice within which the Commissioner can act, without the fear of court interference." *Id.* (*citing Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (*quoting Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, it is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Id*. (*citing Crisp v. Secretary of Health & Human Services*, 790 F.2d 450, 453 n. 4 (6th Cir. 1986)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. *Id.* (*see Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004) ("Although substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the agency failed to follow its own procedural regulation, and the regulation was intended to protect applicants like [plaintiff]."); *Id*. at 546 ("The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action . . . found to be . . . without observance of procedure required by law.' ") (*quoting* 5 U.S.C. § 706(2)(d) (2001)); *cf. Rogers*, 486 F.3d at 243 (holding that an ALJ's failure to follow a regulatory procedural requirement actually "denotes a lack of substantial evidence, even when the conclusion of the ALJ may be justified based upon the record").

"It is an elemental principal of administrative law that agencies are bound to follow their own regulations," *Id.* (*citing Wilson*, *supra*, 378 F.3d at 545, and the Court therefore "cannot excuse the denial of a mandatory procedural protection . . . simply because there is sufficient evidence in the record" to support the Commissioner's ultimate disability determination. *Id*. (*citing Wilson*, *supra*, 378 F. 3d at 546). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless. *Id*. (*see Shinseki v. Sanders*, 129 S. Ct. 1696, 1706 (2009) (finding that a party seeking to overturn an agency's administrative decision normally bears the burden of showing that an error was harmful)).

An ALJ's violation of the SSA's procedural rules is harmless and "will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." *Id.* at *4 (*citing Wilson*, *supra*, 378 F.3d at 546-47 (emphasis added) (*quoting Connor v. United States Civil Services Commissioner*, 721 F.2d 1054, 1056 (6th Cir. 1983)). Thus, an ALJ's procedural error is harmless if his or her ultimate decision is supported by substantial evidence and the error did not deprive the claimant of an important benefit or safeguard. *Id.* (*see Wilson, supra*, 378 F. 3d at 547 (holding that an ALJ's violation of the rules for evaluating the opinion of a treating medical source outlined in 20 C.F.R. § 404.1527(d) was a deprivation of an "important procedural safeguard" and therefore not a harmless error). If a procedural error is not harmless, then it warrants reversing and remanding the Commissioner's disability determination. *Id.* (*citing Blakley*, *supra*, 581 F.3d at 409) (stating that a procedural error, notwithstanding the existence of substantial evidence to support the ALJ's ultimate decision, requires that a reviewing court "reverse and remand unless the error is a harmless de minimis procedural violation").

## VII. PLAINTIFF'S POSITION

Plaintiff asserts two assignment of errors.

First, the ALJ did not follow agency procedure when he failed to give controlling weight to the reports of Dr. Royak or give good reasons for failing to do so.

Second, the ALJ gave substantial weight to the opinion of Dr. Lewin whose report based solely upon her review of the medical evidence.

Plaintiff argues that the ALJ's decision which discounts the opinion of Dr. Royak and credits the opinion of Dr. Lewin is unlawful and unsupported by substantial evidence. Plaintiff further contends that the case should be reversed and remanded in favor of a period of disability beginning on November 17, 2005.

## VIII. DEFENDANT'S POSITION

Defendant contends that the ALJ gave proper weight to the medical source opinions including the opinions of Drs. Royak and Lewin. The Commissioner's decision and the denial of benefits should be affirmed.

## IX. THE TREATING PHYSICIAN RULE AND REASON GIVING REQUIREMENT.

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards. *Blakley, supra,* 581 F.3d at 406. One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* (*citing Wilson, supra*, 378 F.3d at 544) (*quoting* 20 C.F.R. § 404.1527(d)(2)).

The ALJ "must" give a treating source opinion controlling weight if the treating source opinion

is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Id.* (*citing Wilson*, 378 F.3d at 544 (*quoting* 20 C.F.R. § 404.1527(d)(2)). Conversely, "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." *Id.* (*citing* SOC. SEC. RUL. 96-2p, 1996 WL 374188, at *2 (July 2, 1996)).

If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Id.* (*citing Wilson*, 378 F.3d at 544; see also 20 C.F.R. § 404.1527(d)(2)).

Closely associated with the treating physician rule, the regulations require the ALJ to "always give good reasons in [the] notice of determination or decision for the weight" given to the claimant's treating source's opinion. *Id.* (*citing* 20 C.F.R. § 404.1527(d)(2)). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 406-407 (*citing* SOC. SEC. RUL. 96-2p, 1996 WL 374188, at *5). This procedural requirement exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has indicated that he or she is disabled and then an administrative agency decision is rendered indicating that he or she is not disabled. *Id.* (*citing Snell v. Apfel*, 177 F.3d 128, 134 (2nd Cir. 1999)). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Id.* (*citing Wilson*, 378 F.3d at 544).

Because the reason-giving requirement exists to "ensur[e] that each denied claimant receives fair process," we have held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given " denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id.* (*citing Rogers, supra*, 486 F.3d at 243 (emphasis added).

**X. ANALYSIS**

The Magistrate finds that the ALJ followed the procedural requirements for assessing the opinions of a treating source and the state medical consultant. Accordingly, the Commissioner's decision must be affirmed.

**1. DR. ROYAK**

This treating source provided a detailed, longitudinal picture of Plaintiff's mental health status from December 20 2004, through March of 2008. Dr. Royak's notes reflect a clinical review of Plaintiff's symptoms and an analysis of such symptoms for which Dr. Royak administered psychiatric treatment and/or monitored Plaintiff's use of medication. At each session, Dr. Royak explored Plaintiff's cognitive complaints such as whether she was suicidal, felt paranoid or suffered from delusions. The notes are reflective of her responses. Dr. Royak prescribed medication that appeared to equalize the symptoms. His treatment and conclusions drawn were in large part the medical translation of Plaintiff's subjective complaints. There is no evidence that he derived any medical opinions from objective medical findings. Under these circumstances, the ALJ was not required to give controlling weight to Dr. Royak's opinions.

The ALJ explained why Dr. Royak's opinions were given "limited weight" (Docket No. 10, Exhibit 2, p. 14 of 17). He considered that Dr. Royak was a mental health professional who had treated

Plaintiff since April 2004 for what amounted to medication management. There was no recitation of objective medical evidence to support Dr. Royak's opinions. He found that Dr. Royak found Plaintiff's mental status was "normal" when she was compliant with medications. However, Dr. Royak's residual functional capacity assessment did not incorporate these normal thought processes, intact memory and normal motor activity. The ALJ was persuaded by the failure to include these improvements in the residual functional capacity, that Dr. Royak exaggerated Plaintiff's limitations. The ALJ explained precisely why Dr. Royak's opinions were discounted and how those reasons affected the weight given to Dr. Royak's opinions.

**2. DR. LEWIN**

The ALJ attributed significant weight to the opinion of Dr. Lewin because it was generally consistent with the evidentiary record as a whole. The Magistrate finds that the ALJ's decision to accord greater weight to the state agency physician over a treating source is not, by itself, reversible error.

In appropriate circumstances, the opinions of state agency medical consultants may be entitled to greater weight than the opinions of treating or examining sources. TITLES II AND XVI: CONSIDERATION OF ADMINISTRATIVE FINDINGS OF FACT BY STATE AGENCY MEDICAL AND PSYCHOLOGICAL CONSULTANTS AND OTHER PROGRAM PHYSICIANS, SSR 96-6p, 1996 WL 374180, *3 (July 2, 1996).

The opinions of state agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the ALJ and Appeals Councils levels that was not before the state agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the state agency medical or psychological consultant or other program physician or psychologist. *Trent v. Astrue*, 2011 WL 463371, *9 (S. D. Ohio 2011). The

adjudicator must also consider all other facts that could have a bearing on the weight to which an opinion is entitled, including any specialization of the state agency medical or psychological consultant. *Id.* (*citing* SSR 96-6p, 1996 WL 374180 at *2).

Because the ALJ did not give controlling weight to Dr. Royak's opinions, he correctly explained in the decision the weight given to Dr. Lewin's opinions as they relate only to Plaintiff's functional limitations. Dr. Lewin advised that she attributed controlling weight to Dr. Royak's opinions in assessing Plaintiff's functional capacity (Docket No. 10, Exhibit 10, pp. 10, 27 of 52). The ALJ then referred to SSR 96-6p as a basis for wholly crediting the state agency consultants' opinions with regard to the impact of Plaintiff's mental status on her functional abilities. Dr. Lewin reviewed the file and spoke with Plaintiff and her family members. These opinions of Plaintiff's functional limitations are consistent with and supported by Plaintiff's testimony of her symptoms and her daily activities (Docket No. 10, Exhibit 10, p. 9 of 52).

Since the ALJ performed his function pursuant to requirements of the regulations, the Magistrate recommends upholding his decision to give significant weight to the opinion of Dr. Lewin.

## XI. CONCLUSION

For the foregoing reasons, the Magistrate recommends that the Court affirm the Commissioner's decision and terminate the referral to the Magistrate.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Dated: June 20, 2011

## XII. NOTICE

Please take notice that as of this date the Magistrate's report and recommendation attached hereto

has been filed. Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to the report and recommendations within fourteen (14) days after being served with a copy thereof. Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure. The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. Any party may respond to another party's objections within fourteen days after being served with a copy thereof.